IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-7-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| BRANDON J. COVINGTON | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to suppress certain evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution. (DE 40). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert B. Jones, Jr., entered memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motion be denied. (DE 46). Defendant timely objected to the M&R. The government did not respond to defendant's objection, and the time to do so has expired. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion is denied.

**STATEMENT OF THE CASE**

On January 10, 2018, defendant was indicted for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924. Defendant filed the instant motion to suppress June 15, 2019, seeking suppression of all evidence obtained from a search of defendant's vehicle. In support, defendant argues the search warrant for defendant's vehicle lacked probable cause, on grounds that the attendant affidavit 1) failed to allege sufficient temporal

proximity between the allegations and the issuance of the warrant and 2) did not establish the informant's basis of knowledge. Alternatively, defendant requested a Franks hearing to determine whether the search warrant affiant intentionally omitted material information from the search warrant affidavit. The government responded in opposition. On July 29, 2019, the magistrate judge denied defendant's request for a Franks hearing and set the instant motion to suppress for hearing on August 16, 2019.

During the hearing, the government offered testimony from Sergeant A. M. Holmes ("Sergeant Holmes") and Senior Officer John Santana ("Officer Santana"), of the Raleigh Police Department ("RPD"), and exhibits including 1) a photograph of a door allegedly damaged by defendant; 2) video footage allegedly showing defendant threatening his girlfriend, Shauntae Harris ("Harris") with a gun; 3) a photograph showing time stamp of the abovementioned video; 4) a photograph of the front of defendant's vehicle; 5) a photograph of the rear of defendant's vehicle; 6) the search warrant for defendant's vehicle, accompanied by search warrant affidavit; 7) defendant's car insurance policy and pay stub; and 8) a photograph of the gun found in defendant's vehicle. Although defendant did not testify, he presented a pro se argument, against the advice of counsel, that the video footage recorded by Harris constituted electronic surveillance of him, in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518 ("Section 2518").

The magistrate judge entered M&R August 27, 2019, finding: 1) the search warrant was supported by probable cause; 2) alternatively, the good faith exception applies; and 3) Harris's video footage of defendant did not violate Section 2518. Defendant filed written objection to the magistrate judge's first two findings.

# STATEMENT OF FACTS

A.  Search Warrant

On May 8, 2017, around 5:45 a.m., officers of the RPD responded to a report that a male wearing a black and white jacket was attempting to kick down the door of an apartment located at 3225 Calumet Drive in Raleigh, North Carolina. (Transcript of Hearing ("Tr.") (DE 47) 4:19-5:11). Sergeant Holmes arrived on the scene and witnessed defendant, who matched the description in the report, pushing on the bottom of the apartment door, which was bent inwards approximately 12 inches. (Tr. 5:15-21; 7:2-11). In order to conduct an investigation, Sergeant Holmes detained defendant, walked him downstairs, and placed him in the custody of another officer, who was in the parking lot of the apartment complex. (Tr. 8:20-9:11).

Sergeant Holmes discovered someone had locked the deadbolt from the inside of the apartment, so he attempted to gain entry to ensure the occupant was safe. (Tr. 10:1-14). After kicking and manipulating the door for 20 to 30 minutes, Sergeant Holmes, along with other RPD officers, entered the apartment. (Tr. 10:15-11:10). While doing a protective sweep, Officer Santana observed two 22-ounce beers and a television with elevated volume but did not see any occupants. (Tr. 21:24-22:4). The officers kicked down a bedroom door and found Harris asleep in the closet under blankets and pillows next to a cup of alcohol. (Tr. 22:6-19; 11:13-18; 43:3-9). Officer Santana described Harris as "waking up from a really, hard, hard sleep," and he smelled alcohol on her breath. (Tr. 22:20-24). Sergeant Holmes called Emergency Medical Services ("EMS"), but Harris indicated she did not require medical attention, as she had only consumed two beers and a Benadryl, so Sergeant Holmes canceled his EMS request. (Tr. 22:20-23:20; 11:20-12:5).

Officer Santana directed Harris to the living room to conduct an interview, and Harris followed him without assistance. (Tr. 23:3-10). Harris reported arguing with defendant around 2:00 a.m. and subsequently locking him out of the apartment. (Tr. 23:15-19). In response, Officer Santana asked Harris if defendant had ever threatened her. (Tr. 24:8-9). Harris indicated he threatened her several times and showed Officer Santana a video on her cell phone of defendant threatening her with a gun. (Tr. 24:11-19).

Harris tried to email the video to Officer Santana; however, it was too large to send, so Harris shortened the video. (Tr. 25:4-8). When Harris's attempt to send the shortened video failed, Officer Santana recorded it using his own cell phone. (Tr. 25:7-12). He asked Harris for the video's time stamp, but when she shortened the video, a new time stamp was generated, reflecting the date it was edited, not the date it was recorded. (Tr. 25:18-14). So, instead Officer Santana took picture of the time stamp on the original video, which indicated the video was recorded on April 5, 2017, at 1:18 p.m. (Tr. 25:13-26:2; Government's Exhibit 3).

Officer Santana asked Harris if she knew where defendant stored his gun. (Tr. 29:12-14). Harris indicated that he kept it in the trunk of his car but did not claim to have personally seen the gun in defendant's trunk; rather, she suggested defendant had informed her that is where he kept it. (Tr. 46:12-47:11). Harris indicated defendant's vehicle was parked in the visitor's spot outside of her apartment and pointed out the window to show Officer Santana the location of defendant's car. (Tr. 29:18-19). The parking lot, located approximately 15 to 20 feet from Harris's apartment, was not full; however, there were quite a few cars parked inside of it. (Tr. 9:6-9; Tr. 16:6-11).

Harris also indicated that defendant was a felon, which Officer Santana confirmed by searching the Raleigh Intelligence Center ("RIC") database. (Tr. 30:22-31:3). Thereafter, Officer Santana arrested defendant, conducted a search incident to arrest, and located a key to a Saturn in

defendant's right pocket. (Tr. 31:7-15). When Officer Santana took custody of the key to the Saturn at the Wake County Jail, defendant became very upset, indicating that he owned the Saturn and wanted his key back. (Tr. 31:16-24).

At approximately 12:00 p.m. on May 8, 2017, Officer Santana obtained a search warrant by submitting the following affidavit:

> I, Senior Officer J.C. Santana have been with the Raleigh Police Department for 11 years. I am currently assigned to patrol the Southeast Raleigh area. I have been trained in all areas of law enforcement through the Raleigh Police Academy, and regularly scheduled in-service training. Through my training and experience I am familiar with crimes involving firearms and related crimes.
>
> On 05/8/2017, I responded to check on the welfare of an individual related to a domestic violence situation [at] 3225-E Calumet Dr, Raleigh, NC 27610. When I arrived officers were attempting to gain entry to a victim of domestic violence. The suspect, Brandon Covington, had been arrested after he was trying to kick her front door down and had damaged her door. After gaining entry, the victim was located in a bedroom hiding from Mr[.] Covington [Date of Birth redacted].
>
> I began interviewing the victim about the incident and conducted a domestic violence lethality screen. During the screen, I asked the victim if "Has [h]e ever used a weapon against you or threatened you with a weapon?" Her response was "Yes." The victim then provided me with a video of Brandon threatening her with a black pistol in his right hand. The time stamp on the video was 04/05/2017 at 1:18 PM. The victim then advised that he is a convicted felon and keeps the firearm in the trunk of the vehicle. She advised that the vehicle was parked [in] the parking lot in front of her apartment.
>
> A criminal history inquiry indicated that Mr. Covington is a convicted felon. Mr. Covington's last felony conviction was habitual misdemeanor assault [which is] a Class H felony. He was found guilty of that charge on 02/19/2016.
>
> Vehicle keys to a Saturn were located on Brandon Covington's person. Brandon was standing beside the vehicle with windows rolled down when he was taken into custody. Brandon Covington was charged with Breaking and Entering to Terrorize the Occupant [under] G.S. 14-54(A1) and was upset that I would not return his keys. He also made multiple statements at the jail acknowledging that the vehicle was his property.

<u>Conclusion</u>

5

> Based on my investigation of the 2002 Saturn vehicle, VIN:168JW54R82Y513092, with a North Carolina registration plate of 30-Day-22879429. I request that a search warrant to [sic] be issued to search and seize the items related to the firearm offense.

(Exhibit 6).

Thereafter, state magistrate judge issued a search warrant for defendant's vehicle. Upon searching the vehicle, officers found an insurance policy and a pay stub linking the vehicle to defendant. (Tr. 35:3-6). Moreover, officers seized a .25 caliber pistol from the trunk of the vehicle. (Tr. 36:3-17).

B.  Hearing

During the hearing, Sergeant Holmes testified that he detained defendant and took him into custody while on the second-floor landing outside of Harris's apartment. (Tr. 16:12-16). As such, Sergeant Holmes confirmed defendant was not standing next to a car when he was detained, in contrast to the facts set forth in the search warrant affidavit. (Tr. 16:17-20). Thereafter, Officer Santana was asked why he included the statement "Brandon was standing beside the vehicle with the windows rolled down when he was taken into custody" in the search warrant affidavit. (Tr. 49:12-21). In response, Officer Santana indicated that he arrived on the scene after defendant was taken into custody, so he did not witness defendant standing next to the car. (Tr. 53:1-4). However, he included this statement in the search warrant affidavit because another officer had informed him of such. (Tr. 53:1-4).

## DISCUSSION

A.  Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a

specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B. Analysis

Defendant objects to the magistrate judge's finding that the search warrant for his vehicle was supported by probable cause, arguing the search warrant affidavit 1) failed to allege sufficient temporal proximity between the allegations and the application for the warrant and 2) did not establish the informant's basis of knowledge. In addition, defendant objects to the magistrate judge's alternative finding that the good faith exception applies to the instant action.

The Fourth Amendment to the United States Constitution secures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." United States v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004) (quoting California v. Carney, 471 U.S. 386, 390 (1985)). Additionally, to be valid, a search warrant must "contain a particular description of the place to be searched, and the persons or things to be seized" and "be based upon probable cause, supported by Oath or affirmation." United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994) (citing Dalia v. United States, 441 U.S. 238, 255 (1979)).

"The probable cause standard is not defined by bright lines and rigid boundaries." United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992). Rather, "the standard allows a magistrate to review the facts and circumstances as a whole and make a commonsense determination of whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Indeed, "the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." Id. (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). This standard "does not demand showing that such a belief be correct or more likely true than false." Id.

When reviewing the magistrate's probable cause determination, "[the court's] inquiry is directed to whether the magistrate had a substantial basis for his conclusion that probable cause existed." Id. In conducting this inquiry, "[the court] must accord great deference to the magistrate's assessment of the facts presented to him." United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). Additionally, "the reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). Importantly, "reviewing courts must resist the temptation to 'invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner.'" Blackwood, 913 F.2d at 142 (quoting Gates, 462 U.S. at 236).

1. Temporal Proximity

In objections, defendant argues the search warrant affidavit fails to establish the requisite temporal proximity between allegations and the issuance of the search warrant. Specifically, defendant claims that a video allegedly showing him with a firearm does not provide probable cause for the search warrant, since the video was allegedly recorded more than a month before the

search warrant was issued, Harris relied on the video's time stamp as indication of when it was recorded, and the reliability of the time stamp process is unknown.

"[T]ime is a crucial element of probable cause." United States v. McCall, 740 F.2d 1331, 1335 (4th Cir. 1984). Indeed, "a valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." Id. at 1335-36. Accordingly, "evidence sized pursuant to a warrant supported by stale probable cause is not admissible in a criminal trial to establish the defendant's guilt." Id. at 1336.

Importantly, "the vitality of probable case cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." United States v. Farmer, 370 F.2d 435, 439 (4th Cir. 2004) (internal quotations omitted). Indeed, "many courts have found probable cause to exist despite substantial gaps between the observation of the evidence at a particular premises and the issuance of a search warrant." McCall, 740 F.2d 1336. Accordingly, courts "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." Farmer, 370 F.3d at 439. Ultimately, the court's "fundamental concern," is whether "the facts alleged in the warrant furnish probable cause to believe, at the time the search was actually conducted, [ ] evidence of criminal activity was located at the premises searched." McCall, 740 F.2d at 1336.

Here, the video allegedly depicting defendant threatening Harris with a gun was recorded on April 5, 2017, at 1:18 p.m., according to the video's time stamp, which was 33 days before the issuance of the search warrant. However, probable cause cannot be determined by "simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." Farmer, 370 F.3d at 439. Instead, the court must consider the "nature of the unlawful

activity alleged," "the length of the activity," and the "nature of the property to be seized." Id. And as here, where the unlawful activity alleged, possession of a firearm, is of a continuous nature, the passage of time between the allegations and issuance of the warrant is of minimal significance. See e.g., Farmer, 370 F.3d at 435 (The ongoing nature of [defendant's activity] rendered the recency of the information in [the] affidavit less crucial, and suggested that probable cause was not diminished solely by the passage of time."); United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995) ("[People] tend[] to hold onto their firearms for long periods of time—often as long as ten or twenty years.").

Defendant's argument challenging the reliability of the time stamp process is also unavailing. As the Fourth Circuit cautioned, "reviewing courts must resist the temptation to invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." Blackwood, 913 F.2d at 142. Here, where an automatically generated time stamp indicated the video was recorded on April 5, 2017, and where defendant has provided no grounds for questioning the time stamp's reliability, invalidating the warrant for this reason would be a "hypertechnical" rather than a "commonsense" approach to probable cause.

2. Basis of Knowledge

Next, defendant argues the search warrant was not supported by probable cause because the attendant affidavit failed to establish Harris's basis of knowledge as an informant. Where, as here, the issuance of a search warrant was based in part on an informant's statement, "it is necessary to consider all the circumstances set forth in the affidavit including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." Hodge, 354 F.3d at 309 (citing Gates, 462 U.S. at 238). Additionally, "the degree to which an informant's story is corroborated may also be an important factor." Id.

Here, Harris told officers that defendant had threatened her with a gun, he was a convicted felon, and he kept the gun in the trunk of his car, which was in the parking lot outside of her apartment. Harris's statements were corroborated and sufficiently reliable to establish probable cause. First, the video Harris showed to Officer Santana corroborated her allegation that defendant had threatened her with a gun. Next, Officer Santana verified defendant was a convicted felon through the RIC database, just as Harris had alleged. Harris also informed officers that defendant's car was in the parking lot outside of her apartment, which was corroborated when officers found a key to the vehicle in defendant's pocket during a search incident to arrest and defendant stated he owned the vehicle.

Although Harris did not indicate how she knew defendant kept a gun in the trunk of the car, in light of her personal relationship with him, it is reasonable that she would know the gun's location. Likewise, Harris's knowledge of defendant's possession and storage of the gun could be inferred from the fact that she had a video of defendant holding the gun. Defendant argues that Harris is not a reliable informant because she was impaired and biased against defendant. However, where Harris's statements were sufficiently corroborated by independent evidence, her state of mind and possible bias are not material.

3.  Good Faith Exception

Finally, defendant objects to the magistrate judge's alternative finding that, even if the search warrant lacked probable cause, the good faith exception applies. Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." United States v. Thomas, 908 F.3d 68, 72 (4th Cir. 2018). However, the United States Supreme Court carved out an exception to that rule, known as the "good faith exception," "under which evidence obtained by an officer

who acts in objectively reasonable reliance on a search warrant will not be suppressed, even if the warrant is later deemed invalid." Id. (citing United States v. Leon, 468 U.S. 897, 922 (1984). When "assessing the officer's objective good faith," reviewing courts may "look beyond the four corners of the affidavit" and consider "all the circumstances" including "uncontroverted facts known to an officer but inadvertently not presented to the magistrate." Id. at 73.

The Fourth Circuit has enumerated four "limited situations" in which the good faith exception will not apply:

> 1) when the affiant base[s] his application knowing or reckless falsity; 2) when the judicial officer wholly abandon[s] his role as a neutral and detached decision maker and served merely as a rubber stamp for the police; 3) when the affidavit supporting the warrant [i]s so lacking in indicia of probable cause as to render official belief in its existence and entirely unreasonable; and 4) when the warrant [i]s so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid.

United States v. Wellman, 663 F.3d 224, 228-229 (4th Cir. 2011).

During the hearing, Officer Santana testified that Harris knew where defendant kept his gun because defendant told her that information personally. He also testified that Harris identified defendant's car by pointing to it from her apartment window and stating it was parked in the visitor's spot. These facts, which were not included in the affidavit, provided Officer Santana with additional grounds to believe the gun would be found in defendant's car. Thus, considering all of the circumstances, Officer Santana was objectively reasonable in relying on the search warrant. Furthermore, the four "limited situations" precluding application of the good faith exception are absent here.

In sum, the search warrant in the instant case was supported by probable cause. However, even if probable cause was lacking, the good faith exception applies, precluding suppression of evidence. Accordingly, defendant's motion to suppress must be denied.

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation of the M&R (DE 46) and DENIES Defendant's motion to suppress. (DE 40).

SO ORDERED, this the 12th day of December, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge